No. 22-1817

---

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

---

H & T Fair Hills, Ltd., Mark Hein, Debra Hein, Nicholas Hein, Norman Zimmerman, Donna Zimmerman, Steven Wherry, Valerie Wherry, Robert Ruebel, Mary Ruebel and Larry Ruebel, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees,*

and Alliance Pipeline L.P., a/k/a Alliance USA,

*Defendant-Appellant.*

APPEAL FROM DECISION OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA
No. 0:19-cv-01095-JNE-BRT
The Honorable Joan N. Ericksen

---

## BRIEF OF PLAINTIFFS-APPELLEES

---

Michael R. Cashman
Anne T. Regan
Brian W. Nelson
**HELLMUTH & JOHNSON PLLC**
8050 West 78th Street
Edina, Minnesota 55439
Telephone: (952) 941-4005
Facsimile: (952) 941-2337
mcashman@hjlawfirm.com
aregan@hjlawfirm.com
bwnelson@hjlawfirm.com

Drew R. Ball
Steve McCann
**BALL & McCANN, P.C.**
161 North Clark Street,
Suite 1600
Chicago, Illinois 60601
Telephone: (872) 205-6556
drew@ballmccannlaw.com
steve@ballmccannlaw.com

**ATTORNEYS FOR
PLAINTIFFS-APPELLEES**

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Plaintiffs-Appellees ("Plaintiffs") are a certified class of agricultural landowners or lessees who seek compensation for ongoing yield losses resulting from the soil injury Defendant-Appellant caused when it constructed its pipeline across their land. Before construction the States of North Dakota, Minnesota, Iowa and Illinois imposed on Defendant contract duties in Agricultural Input Mitigation Agreements ("AIMAs"), to mitigate and compensate for construction-related damages, including for ongoing yield loss. Defendant paid Plaintiffs for ongoing yield losses for over fourteen years pursuant to the AIMAs and the Federal Energy Regulatory Commission ("FERC") Certificate of Authority ("CoA") that incorporated the AIMAs. In 2015, it unilaterally terminated these payments.

Two years after Plaintiffs filed their complaint, Defendant sought to dismiss Plaintiffs' claims under the Federal Arbitration Act ("FAA") based on alleged arbitration clauses in separate easement contracts. The district court erred in holding that Plaintiffs agreed to arbitrate, and also erred in holding that Defendant did not waive arbitration rights. Plaintiffs request 20 minutes for oral argument.

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 8th Cir. R. 26.1A, Plaintiff H & T Fair Hills, Ltd., by and through its attorneys, makes the following disclosures:

Named Plaintiff H & T Fair Hills, Ltd. does not have a parent corporation and is not owned or controlled by a publicly held corporation. The remaining Named Plaintiffs are not corporate parties.

Appellate Case: 22-1817    Page: 3    Date Filed: 07/15/2022 Entry ID: 5177632

# TABLE OF CONTENTS

Statement Of Jurisdiction ................................................................. 1

Statement Of The Issues .................................................................. 1

Statement Of The Case ..................................................................... 3

    I.    The AIMAs ......................................................................... 3

    II.   The AIMA Duty To Pay Ongoing Yield Losses Was
          Incorporated Into The FERC Certificate of Authority
          As A Condition Of Approval To Construct And Operate
          The Pipeline. ...................................................................... 6

    III.  The Compensation Rights Under The AIMAs Were
          Non-Negotiable ................................................................... 7

    IV.  Defendant Judicially Admitted That Landowners Were
          Entitled To Ongoing Yield Loss Compensation ..................... 9

    V.   Defendant's Pipeline Construction Caused Soil Injury
          Which Results In Yield Losses That Will Persist At
          Least Through 2050. ......................................................... 11

    VI.  Defendant Paid For Yield Losses Resulting From Soil
          Injury Caused By Pipeline Construction For Fourteen
          Years. .............................................................................. 13

    VII. Procedural History ........................................................... 14

Summary Of The Argument ............................................................. 17

Argument ....................................................................................... 18

    I.    Standard Of Review .......................................................... 18

    II.   The District Court Correctly Determined That
          Defendant Was Not Entitled To Dismissal. ........................ 19

    III.  The District Court Erred By Granting A Stay Because
          Neither Plaintiffs' Claims Nor The Easements Are
          Governed By The FAA. ...................................................... 22

Appellate Case: 22-1817    Page: 4    Date Filed: 07/15/2022 Entry ID: 5177632

A.   The States did not agree to arbitration, therefore no agreement to arbitrate exists...................................22

B.   The district court erred in finding Plaintiffs' AIMA claims fall within the scope of the easements' appraisal clause.........................................27

1)   The district court's contract analysis was erroneous............................................................28

2)   3M v. Amtex Is Inapposite...................................33

C.   Even if the boilerplate easement language applied, it is not an FAA arbitration argement.........34

IV.   The Easements' Elective Appraisal Provision Is Limited Solely To "Damages To Crops" And Not Soil Injury Resulting In Ongoing Yield Losses, And Is Also Limited To Disputes About The Amount Of Monetary Damages. ..................................................................39

A.   The courts, not an arbitrator, decide what is arbitrable.........................................................40

B.   Declaratory relief and liability issues are not arbitrable, just as AIMA compensation claims are not arbitrable. .......................................................41

V.   The District Court Erred In Holding Defendant Did Not Waive Whatever Arbitration Rights It Allegedly Had. ...................................................................44

A.   Defendant's FAA Motion was untimely......................47

B.   This Circuit Court's prior decisions demonstrate that Defendant relinquished a known right by its litigation conduct. .......................................................53

VI.   The Court May Decide All Issues Raised By The Order......59

Conclusion ...............................................................62

iv

# TABLE OF AUTHORITIES

*Cases*                                                          *Page(s)*

*3M Co. v. Amtex Sec., Inc.,*
    542 F.3d 1193 (8th Cir. 2008)                              33, 34

*AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*
    242 F.3d 777 (8th Cir. 2001)                                     23

*Alliance Pipeline, L.P.,*
    84 FERC ¶ 61,239 (1998)                                    6, 31, 32

*Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*
    411 F.3d 669 (6th Cir. 2005)                                   1, 26

*Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.,*
    96 F.3d 88 (4th Cir. 1996)                                       56

*Amoco Pipeline Co. v. Dave Kolb Grading, Inc.,*
    815 F. Supp. 314 (E.D. Mo. 1993)                                 38

*Arthur Andersen LLP v. Carlisle,*
    556 U.S. 624 (2009)                                              52

*Boykin v. Fam. Dollar Stores of Mich., LLC,*
    3 F.4th 832 (6th Cir. 2021)                                      19

*BP P.L.C. v. Mayor of Baltimore,*
    141 S. Ct. 1532 (2021)                                           19

*Bhd. of Maint. of Way Emps. v. Terminal R.R. Ass'n of St. Louis,*
    307 F.3d 737 (8th Cir. 2002)                                     42

*Cole v. UAW,*
    533 F.3d 932 (8th Cir. 2008)                                     40

*Contracting Nw., Inc. v. City of Fredericksburg,*
    713 F.2d 382 (8th Cir. 1983)                                     52

Appellate Case: 22-1817    Page: 6    Date Filed: 07/15/2022 Entry ID: 5177632

*CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*,
    381 F.3d 131 (3d Cir. 2004)                                    59

*Devlin v. Scardelletti*,
    536 U.S. 1 (2002)                                          48, 49

*Devon Robotics, LLC v. Davida*,
    798 F.3d 136 (3d Cir. 2015)                                    20

*Donaldson Co. v. Burroughs Diesel, Inc.*,
    581 F.3d 726 (8th Cir. 2009)                                   18

*Donelson v. Ameriprise Fin. Servs., Inc.*,
    999 F.3d 1080 (8th Cir. 2021)                         1, 2, 18, 50

*Duit Const. Co. v. Bennett*,
    796 F.3d 938 (8th Cir. 2015)                                   60

*Duncan v. Int'l Mkts. Live, Inc.*,
    20 F.4th 400 (8th Cir. 2021)                               22, 23

*DuTrac Cmty. Credit Union v. Radiology Grp. Real Est., L.C.*,
    891 N.W.2d 210 (Iowa 2017)                                     22

*Energy Transfer Fuel, LP v. Estate of Souter*,
    2010 WL 1611082 (Tex. Ct. App. April 21, 2010)                 38

*Erie Oil & Gas, Inc. v. Canfield Farms, Inc.*,
    1991 WL 253899 (Ohio Ct. App. Oct. 11, 1991)                   39

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995)                                         2, 41

*Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*,
    374 F.3d 1 (1st Cir. 2004)                                 35, 36

*Fogarty v. Piper*,
    767 F.2d 513 (8th Cir. 1985)                                   55

*GGNSC Omaha Oak Grove, LLC v. Payich*,
    708 F.3d 1024 (8th Cir. 2013)                                  27

Appellate Case: 22-1817    Page: 7    Date Filed: 07/15/2022 Entry ID: 5177632

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
    561 U.S. 287 (2010)       22, 23

*Green v. SuperShuttle Int'l, Inc.,*
    653 F.3d 766 (8th Cir. 2011)       21

*Harper v. Virginia Dep't of Tax'n,*
    509 U.S. 86 (1993)       44

*Hartford Lloyd's Ins. Co. v. Teachworth,*
    898 F.2d 1058 (5th Cir. 1990)       36

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002)       2, 40

*In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.,*
    71 F.3d 298 (8th Cir. 1995)       52

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,*
    999 F.3d 257 (5th Cir. 2021)       44

*Johnson Assocs. Corp. v. HL Operating Corp.,*
    680 F.3d 713 (6th Cir. 2012)       55

*Kamen v. Kemper Fin. Servs., Inc.,*
    500 U.S. 90 (1991)       19

*Kessler v. Nat'l Enters., Inc.,*
    203 F.3d 1058 (8th Cir. 2000)       60, 62

*Kincade v. City of Blue Springs,*
    64 F.3d 389 (8th Cir. 1995)       60

*Kleinheider v. Phillips Pipe Line Co.,*
    528 F.2d 837 (8th Cir. 1975)       2, 35

*Klimek v. Horace Mann Insurance Co.,*
    14 F.3d 185 (2d Cir. 1994)       43

*Lee v. Burlington N. Santa Fe Ry. Co.,*
    245 F.3d 1102 (9th Cir. 2001)       61

Appellate Case: 22-1817    Page: 8    Date Filed: 07/15/2022    Entry ID: 5177632

*Lewallen v. Green Tree Servicing, L.L.C.*,
  487 F.3d 1085 (8th Cir. 2007)     58

*Luis v. RBC Cap. Mkts., LLC*,
  984 F.3d 575 (8th Cir. 2020)     22

*Lyons v. PNC Bank, Nat'l Ass'n*,
  26 F.4th 180 (4th Cir. 2022)     60

*McCoy v. Walmart, Inc.*,
  13 F.4th 702 (8th Cir. 2021)     58

*McCrary v. Stifel, Nicolaus & Co.*,
  687 F.3d 1052 (8th Cir. 2012)     48, 51

*Messina v. N. Cent. Distrib., Inc.*,
  821 F.3d 1047 (8th Cir. 2016)     55

*Moen v. Meidinger*,
  547 N.W.2d 544 (N.D. 1996)     22

*Morgan v. Sundance, Inc.*,
  142 S. Ct. 1708 (2022)     *passim*

*Morgan v. Sundance, Inc.*,
  992 F.3d 711 (8th Cir. 2021)     56, 57

*Munroe v. Cont'l W. Ins. Co.*,
  735 F.3d 783 (8th Cir. 2013)     18, 60

*Nesslage v. York Sec., Inc.*,
  823 F.2d 231 (8th Cir. 1987)     55

*Packer River Terminal, Inc. v. City of Minneapolis*,
  445 N.W.2d 269 (Minn. Ct. App. 1989)     42

*Phillips Petroleum Co. v. Morris*,
  518 S.W.2d 444 (Tx. Ct. App. 1975)     29

*Reid v. Doe Run Res. Corp.*,
  701 F.3d 840 (8th Cir. 2012)     21

Appellate Case: 22-1817    Page: 9    Date Filed: 07/15/2022 Entry ID: 5177632

*Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.,*
 989 F.2d 966 (8th Cir. 1993)      57

*Rosenblum v. Travelbyus.com Ltd.,*
 299 F.3d 657 (7th Cir. 2002)      *passim*

*Ross Brothers Construction Co. v. International Steel Services,*
 283 F.3d 867 (7th Cir. 2002)      42

*Salt Lake Trib. Publ'g Co. v. Mgmt. Plan., Inc.,*
 390 F.3d 684 (10th Cir. 2004)      35, 36, 37

*Sanitary Farm Dairies v. Gammel,*
 195 F.2d 106 (8th Cir. 1952)      35

*Seldin v. Seldin,*
 879 F.3d 269 (8th Cir. 2018)      20

*Shatsky v. Palestine Liberation Org.,*
 955 F.3d 1016 (D.C. Cir. 2020)      61

*Sitzer v. Nat'l Ass'n of Realtors,*
 12 F.4th 853 (8th Cir. 2021)      2, 58

*Smith v. Bayer Corp.,*
 564 U.S. 299 (2011)      49

*Smith v. Metropolitan Property & Liability Insurance Co.*
 629 F.2d 757 (2d Cir. 1980)      43

*Tristani v. Richman,*
 652 F.3d 360 (3d Cir. 2011)      19, 60

*Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers*
 *v. Bridgestone / Firestone, Inc.,*
 61 F.3d 1347 (8th Cir. 1995)      26

*United States Parole Comm'n v. Geraghty,*
 445 U.S. 388 (1980)      48

*Vallone v. CJS Sols. Grp., LLC,* 9 F.4th 861 (8th Cir. 2021),
 9 F.4th 861 (8th Cir. 2021)      51

Appellate Case: 22-1817    Page: 10    Date Filed: 07/15/2022 Entry ID: 5177632

*Waste Mgmt. Holdings, Inc. v. Mowbray,*
208 F.3d 288 (1st Cir. 2000) .............................................. 54, 57

*Williams v. N. Nat. Gas Co.,*
136 F. Supp. 514 (N.D. Iowa 1955) ......................................... 29

*Yamaha Motor Corp., U.S.A. v. Calhoun,*
516 U.S. 199 (1996) ........................................................ 1, 18

*Zerby v. City of Long Beach,*
637 F. App'x 1008 (9th Cir. 2016) .......................................... 61

## Statutes

9 U.S.C. § 2 .................................................... 2, 46, 52

9 U.S.C. § 3 ...................................................... *passim*

9 U.S.C. § 4 .................................................... 1, 19, 20

9 U.S.C. § 11 ........................................................ 38

## Rules

Fed. R. Civ. P. 8 .................................................... 55

Fed. R. Civ. P. 12 ................................... 51, 52, 53, 57

Fed. R. Civ. P. 23 ................................................ 14, 51

Appellate Case: 22-1817    Page: 11    Date Filed: 07/15/2022 Entry ID: 5177632

## STATEMENT OF JURISDICTION

The district court issued a non-final order ("Order") under the FAA, 9 U.S.C. §§ 1-16. The Court may exercise jurisdiction over any issue "fairly included" in the Order. *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1087 (8th Cir. 2021), *cert. denied sub nom. Donelson v. Ameriprise Fin.*, 142 S. Ct. 2675 (2022) (citing *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)).

## STATEMENT OF THE ISSUES

1. Whether the FAA authorizes a court to dismiss claims, where the plain language of the FAA does not allow dismissal.

   *Apposite authorities*:

   9. U.S.C. §§ 3-4


2. Whether the district court erred in granting a stay because no valid agreement to arbitrate exists and the stayed issues concerning damages are non-arbitrable.

   *Apposite authorities:*

   9 U.S.C. § 3

   *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657 (7th Cir. 2002)

   *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*
   411 F.3d 669, (6th Cir. 2005)

1

3. Whether the district court correctly concluded that declaratory relief and liability issues could not be arbitrated.

   *Apposite authorities:*

   *Kleinheider v. Phillips Pipe Line Co.*, 528 F.2d 837 (8th Cir. 1975)

   *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)

   *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995)


4. Whether the district court erred in determining Defendant had not waived its right to arbitration where it is undisputed that Defendant waited over two years to file its Motion to Compel Arbitration and Dismiss Arbitrable claims.

   *Apposite authorities*:

   9 U.S.C. § 2

   *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022)

   *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853 (8th Cir. 2021)

   *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080 (8th Cir. 2021), *cert. denied sub nom. Donelson v. Ameriprise Fin.*, 142 S. Ct. 2675 (2022)

Appellate Case: 22-1817   Page: 13   Date Filed: 07/15/2022 Entry ID: 5177632

# STATEMENT OF THE CASE

## I.     The AIMAs

Every Plaintiff in the certified class is a direct intended beneficiary of an AIMA executed between Defendant and the States. Pls. App. 15-61; R. Docs. 29-8 ("MN/IA AIMA"); 29-9 ("ND AIMA"); 29-10 ("IL AIMA").[1] The States executed AIMAs with Defendant because they were concerned about the "Pipeline's ongoing persistent effect on future crop production," and therefore sought to ensure "that the landowners [on the Pipeline right-of-way] were compensated for damages both during construction of the Pipeline and for any damages such as crop [yield] loss along the Pipeline right-of-way in the future." Pls. App. 179; R. Doc. 246, at 3, ¶¶ 8-9 (Declaration of Stephen Moline, Iowa Assistant Attorney General ("Moline Decl.")).

The States worked together to execute AIMAs with Defendant which "ensured that landowners had the *unconditional right* to compensation from Alliance Pipeline for future damages, including future crop [yield] loss, following original construction as long as future

---

[1] Plaintiffs have submitted a separate appendix including relevant documents from the record below, and cite to it as "Pls. App." Defendant's Appendix and Addendum are respectively cited as "Def. App." and "Add."

Appellate Case: 22-1817     Page: 14     Date Filed: 07/15/2022 Entry ID: 5177632

damages associated with or related to the Pipeline occurred." (citing MN/IA AIMA, emphasis added); Pls. App. 186; R. Doc. 247, at 2, ¶ 2 (Declaration of Steven D. Chard, Chief of the Illinois Department of Agriculture, Bureau of Land and Water Resources ("Chard Decl.")) (State of Illinois in its AIMA with Defendant "ensure[d] that landowners would not incur *any* economic consequences as a result of being forced to accept the construction of the Pipeline . . . [and that Defendant] would be solely responsible for all economic consequences."); *see also* Pls. App. 175-76; R. Doc. 245, at 2-3, ¶¶ 3-5 (Declaration of Bob Patton, Supervisor of the Energy and Environment Section of the Minnesota Department of Agriculture ("Patton Decl.")); Pls. App. 191-96; R. Doc. 248, at 3-8, ¶¶ 9-20 (Declaration of Alexandra Klass ("Klass Decl.")); Pls. App. 199-201; R. Doc. 248-2, at 3-5, ¶¶ 4, 6, 8 (Affidavit of Paul Strandberg, Assistant Minnesota Attorney General) ("Strandberg Aff.")).

Plaintiffs assert that Defendant has breached the AIMAs by terminating compensation for Pipeline construction-related damages, specifically ongoing yield losses that result from the soil injury caused by Pipeline construction. Pls. App. 92; R. Doc. 193, at 12, ¶¶ 33-34; *see also*

4

Def. App. 21; R. Doc. 29, at 17, ¶¶ 49-50; R. Doc. 361, at 3-12, 21-23. As stated in the Minnesota and Iowa AIMAs, Defendant is required to:

> …reasonably compensate [Plaintiffs] for damages, *losses* or inconvenience caused by [Defendant] which occurred on or off the Pipeline Right-of-Way ["RoW"] *associated with* construction, installation, operation, maintenance and existence of the Pipeline. These damages, *losses* or inconveniences *may include but are not limited to loss of crops*, pasture, timber, trees, produce, livestock, fences, drain tiles, irrigation systems or equipment.

Pls. App. 33; R. Doc. 29-8, at 19, ¶ 22 (emphasis added). Similarly, the North Dakota and Illinois AIMAs require Defendant to "reasonably compensate" landowners "for any construction-related damages caused by [Defendant]." Pls. App. 44; R. Doc. 29-9, at 7, ¶ 8 (ND AIMA); Pls. App. 57; R. Doc. 29-10, at 9, ¶ 10 (IL AIMA). The AIMAs made the payment of compensation to landowners certain, and shifted all procedural or economic burdens, such as proof of causation to Defendant. *See, e.g.,* Pls. App. 175-76; R. Doc. 245, at 2-3, ¶¶ 3-5 (Patton Decl.).

These obligations are perpetual. There are "no preconditions… for landowners to recover damages for crop [yield] losses with respect to future crop losses." Pls. App. 181; R. Doc. 246, at 5, ¶ 18 (Moline Decl.). Yield loss compensation is owed if the yield on the Pipeline RoW is lower

5

than off the RoW; no other obstacles or requirements for the payment of compensation for yield loss stand in the landowners' way. *Id.* 183.

## II. The AIMA Duty To Pay Ongoing Yield Losses Was Incorporated Into The FERC Certificate of Authority As A Condition Of Approval To Construct And Operate The Pipeline.

The Pipeline was constructed in 1999 and 2000 pursuant to a FERC CoA, and crosses approximately 13,000 acres of agricultural land in North Dakota, Minnesota, Iowa, and Illinois (the "States"). R. Doc. 199-1; *Alliance Pipeline, L.P.*, 84 FERC ¶ 61,239 (1998).

The AIMAs were incorporated in full into the CoA issued to Alliance on September 17, 1998, as an explicit condition of construction and operation of the Pipeline. 84 FERC at 62,224 ("[Defendant] shall follow the construction procedures *and mitigation measures* described in its applications and supplements (including responses to staff data requests).") (emphasis added); *see also* Pls. App. 150-51; R. Doc. 199-28, at 36-37 (FERC Final Environmental Impact Statement ("FEIS")). Defendant submitted all three AIMAs to FERC to obtain approval. 84 FERC, at 62,218. Under oath, Defendant admitted it had a duty to compensate landowners for (1) two years of yield losses during the two year original construction period, *and also* (2) future construction-related

6

yield losses. R. Doc. 199-25, at 18; Pls. App. 173; R. Doc. 199-35, at 8, 204:1-20 (Deposition of Michael McGonagill); *see* Pls. App. 150-51; R. Doc. 199-28, at 36-37 (FEIS). Consequently, Plaintiffs are also intended beneficiaries of the FERC CoA because they incorporate the AIMAs in full.

## III. The Compensation Rights Under The AIMAs Were Non-Negotiable.

The AIMAs and FERC CoA incorporating the AIMAs broadly imposed two categories of obligations on Defendant: mitigation obligations and compensation obligations. Pls. App. 16; R. Doc. 29-8, at 2 (Preamble) (MN/IA AIMA) (Defendant "agree[s] to the following measures which the Company will implement as it constructs a natural gas pipeline…These measures are intended to mitigate, or provide compensation for, negative agricultural impacts that may occur due to Pipeline construction."); Pls. App. 39; R. Doc. 29-9, at 2 (Preamble) (ND AIMA); Pls. App. 50; R. Doc. 29-10, at 2 (Preamble) (IL AIMA).

The "mitigative actions" described in the AIMAs were "specified in the construction standards and policies" listed within the AIMAs. *E.g.,* Pls. App. 17; R. Doc. 29-8, at 3. For example, they contain specific standards for pipeline depth, topsoil replacement, tile line repair or

7

replacement, rock removal, removal of construction debris, soil restoration and decompaction, land leveling, prevention of soil erosion, clearing of trees and brush, irrigation systems, and "mitigation for other natural resource impacts." *Id*. 20-31.

The AIMAs then set forth Defendant's compensation obligations. These include "procedures for determining construction-related damages," and additional indemnification and damages provisions, the latter of which gives rise to Plaintiffs' claims. *Id*. 31-33. The AIMA compensation obligations include ongoing payment "for damages, losses or inconvenience caused by [Defendant] which occurred on or off the Pipeline Right-of-Way associated with construction, installation, operation, maintenance and existence of the Pipeline [ ]" for as long as any such damages occur or continue. *E.g.*, *id*. 33.

The AIMAs forbid any broad release of compensation claims in easements, especially rights to compensation for damages — such as ongoing yield losses — which occurred or will continue to occur after the original construction period. *See*, *e.g., id*. The AIMAs only allow modification of the "mitigative actions specified in the construction standard and policies set forth in this Agreement" within an easement.

8

*Id*. 17 (Preamble) (MN/IA AIMA); Pls. App. 39-40; R. Doc. 29-9, at 2-3 (Preamble) (ND AIMA); Pls. App. 50-51; R. Doc. 29-10, at 2-3 (Preamble) (IL AIMA). Defendant expressly understood this limitation, when it agreed with landowners that "nothing in this [easement] may be construed to provide less protection to [landowner] than that afforded by the AIMA." R. Doc. 302-4, at 163, ¶ 4; *see also* R. Doc. 302-4, at 82 (repeating AIMA obligations but not incorporating alleged arbitration language).

## IV. Defendant Judicially Admitted That Landowners Were Entitled To Ongoing Yield Loss Compensation.

In Minnesota state court legal proceedings Defendant judicially admitted in multiple pleadings that it has a duty under the AIMAs to compensate Plaintiffs for all ongoing yield losses. Notably, Defendant stated that "any damages discussed in the AIMA are not recoverable in a condemnation proceeding," meaning Defendant admitted that individual landowner rights and AIMA rights were separate and distinct. Pls. App. 201; R. Doc. 248-2, at 5, ¶ 8 (Strandberg Aff.); Pls. App. 192-94; R. Doc. 248, at 4-6, ¶¶ 12-16 (Klass Decl.).

Defendant made telling admissions in a January 22, 1999 brief:

9

- "The AIMA provides that Alliance will compensate landowners for a host of construction-related damages, [including] crop loss, . . . ."

- "The certificate of public convenience and necessity … *requires Alliance to abide by the terms of the AIMA*."

- "The AIMA benefits current and future owners . . ."

- "[T]he AIMA is a specific, enforceable agreement, and recovery of damages under the AIMA is certain."

Pls. App. 205-08; R. Doc. 248-3, at 3-6 (emphasis added).

Defendant further admitted the AIMAs provided unconditional compensation rights that were separate and distinct from any compensation landowners might otherwise be entitled to receive in a private easement with Defendant or under state law:

- "*In addition* to requiring Alliance to mitigate the impact of its construction activities, . . . the AIMA also provides numerous instances in which Alliance is required to compensate landowners on a dollar for dollar basis . . . " Pls. App. 215; R. Doc. 248-4, at 5 (emphasis added);

- "The general purpose of the AIMA is to benefit the landowners. . . . In addition [to mitigating the negative impact of pipeline construction], the AIMA requires that Alliance reimburse landowners for certain losses . . . " *Id*. 217;

10

- "[B]ecause the AIMA provides compensation for any and all actual crop loss in the future," future yield loss damages are not recoverable under private contracts or in condemnation proceedings. *Id*.;

- The AIMAs are "enforceable [by Plaintiffs] even though [Plaintiffs] are not parties" to them. *Id*. 223;

- "AIMA claims are recoverable under the AIMA" not under private contracts or in condemnation proceedings. *Id*. 219;

- The FERC Certificate "requires Alliance to abide by the terms of the AIMA[s]" and "FERC specifically 14n. 2 determined that . . . Alliance must follow *all* of the construction *and mitigation measures* described therein." *Id*. 224 n.2. (emphasis added)

Because the duty to compensate Plaintiffs for yield losses is the same in all of the AIMAs (and as incorporated in the FERC CoA), Pls. App. 188; R. Doc. 247, at 4, ¶ 7 (Chard Decl.), Defendant's judicial admissions in Minnesota apply to all three AIMAs.

## V. Defendant's Pipeline Construction Caused Soil Injury Which Results In Yield Losses That Will Persist At Least Through 2050.

Construction of the Pipeline caused injury to the soil on the entire RoW. Pls. App. 92; R. Doc. 193, at 12, ¶ 32, (Gomes Declaration); *see also* R. Doc. 362-2, at 7-13, ¶¶ 21-36 (Gomes Expert Report). Defendant's Pipeline construction damaged the soil on the entire RoW, resulting in

11

yield loss each year on the entire RoW. Pls. App. 92-94; R. Doc. 193, at 12-14, ¶¶ 33-37; *see also* R. Doc. 362-2, at 14-15, ¶¶ 36-37. Construction-related soil damage and yield loss on the entire RoW will persist at least through 2050. Pls. App. 96; R. Doc. 193, at 16, ¶¶ 45-46; R. Doc. 362-2, at 18-20, ¶¶ 49-56. Defendant's own data establishes that the construction-related soil damage Defendant caused on the RoW, and the resulting RoW yield loss, is persistent and not declining. Pls. App. 105-06; R. Doc. 195, at 6-7, ¶ 16 (Declaration of Professor Gary D. Schnitkey); R. Doc. 362-3, at 11 (Expert Report of Professor Gary D. Schnitkey); *see* Pls. App. 93-94; R. Doc. 193, at 13-14, ¶¶ 37-39; R. Doc. 362-2, at 18, ¶ 53.

Because all RoW soil was injured in construction, Plaintiffs have suffered RoW yield loss every year since Defendant installed its Pipeline. *See, e.g.,* R. Doc. 189, at 4-7, ¶¶ 12-19 (Nicholas Hein Declaration); R. Doc. 192, at 3-6, ¶¶ 11-18 (Norm Zimmerman Declaration); R. Doc. 191, at 3-6, ¶¶ 11-18 (Steven Wherry Declaration); R. Doc. 190, at 4-6, ¶¶ 11-18 (Bob Ruebel Declaration); Pls. App. 229; R. Doc. 249, at 3, ¶¶ 11-18 (Declaration of Lynn Boll); Pls. App. 234; R. Doc. 250, at 3, ¶¶ 11-18 (Declaration of Steven Lindahl).

12

## VI. Defendant Paid For Yield Losses Resulting From Soil Injury Caused By Pipeline Construction For Fourteen Years.

As required by the AIMAs, Defendant performed its contractual duties from 2001 through 2014 by compensating Plaintiffs for yield losses "without requiring the landowner and/or tenant to establish that the Pipeline was the cause of any such differential (or doing any assessment of causation itself.)." Def. App. 72; R. Doc. 225, at 14, ¶ 36 (Goulart Decl.); Pls. App. 285; R. Doc. 298-5, at 3, 135:21-135:25 (Defendant "didn't determine causation . . . Individuals would call and participate and for their participation payment would be made."). Defendant did not require any action by landowners other than to provide notice of their harvest date. Def. App. 70-71; R. Doc. 225, at 12-13, ¶ 32; Pls. App. 229; R. Doc. 249, at 3, ¶ 12; Pls. App. 234; R. Doc. 250, at 3, ¶ 12; *see also* R. Docs. 199-9-199-14. Defendant calculated reasonable compensation and paid if there was *any* differential in the yield on the RoW versus the yield off the RoW in the same field. Def. App. 70-72; R. Doc. 225, at 12-14, ¶¶ 32-36.

All of the yield loss compensation paid between 2001-14, including two years of "advance calculation" of construction damages, was paid pursuant to Defendant's contractual obligations imposed by the States in

13

the AIMAs and adopted by FERC in the CoA. Pls. App. 286; R. Doc. 298-5, at 4, 137:4-137:25. No compensation was paid to any landowner under an easement damages clause. *Id*.

In this litigation, Defendant has insisted that any compensation owed under the easements is limited solely to Defendant's operational activities on the land, and not to ongoing yield loss resulting from soil injury during pipeline construction. Pls. App. 114; R. Doc. 199-17, at 2.

## VII. Procedural History

Plaintiffs filed their Complaint on April 23, 2019, and amended on July 10, 2019. R. Doc. 1; Def. App. 5-42; R. Doc. 29. Following extensive discovery and motion practice, on June 21, 2021, the district court certified Plaintiffs' breach of contract and declaratory judgment claims under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Def. App. 136; R. Doc. 283, at 29. The Eighth Circuit affirmed class certification on August 26, 2021. R. Doc. 307.

On July 6, 2021, over two years after Plaintiffs filed their Complaint, Defendant filed a Motion to Compel Arbitration and to Dismiss Arbitrable Claims ("FAA Motion"). The sole relief Defendant requested was to compel Arbitration and "dismiss arbitrable claims" of

14

Plaintiffs with alleged arbitration easements. Pls. App. 237; R. Doc. 284, at 1; Pls. App. 239; R. Doc. 288; R. Doc. 286, at 12-13; R. Doc. 300, at 34-36. Defendant asked the Court to determine all issues related to arbitrability. R. Doc. 300, at 6-8.

Plaintiffs opposed Defendant's motion, because there was no valid, enforceable agreement to arbitrate under either the AIMAs or easements. First, neither the AIMAs (nor the FERC CoA incorporating the AIMAs) have any arbitration claims. The AIMAs (and FERC CoA incorporating the AIMAs) are independently enforceable by Plaintiffs. Pls. App. 258-65; R. Doc. 297, at 19-26. Second, the easements are likewise not arbitration agreements, because they do not proscribe binding arbitration on the merits of Plaintiffs' claims, particularly Plaintiffs' claims for ongoing yield loss resulting from soil injury caused by Pipeline construction. *Id*. 266-69. In addition, Plaintiffs argued that Defendant waived its right to enforce the alleged arbitration clause. *Id*. 269-79.

The parties have filed cross-motions for summary judgment and motions to exclude the other side's experts, which the district court heard

15

on January 10, 2022, at the same time when it heard Defendant's FAA Motion. *See* R. Docs. 284; 289; 312; 319; 326; 332; 338; 343; 349; 359; 364.

The district court denied the portion of Defendant's FAA Motion seeking dismissal, but erroneously granted a stay of certain issues. Add. 5, 24-28; R. Doc. 443, at 1, 20-24. Defendant noticed its appeal, asserting that it seeks review of that "portion of the Order" denying its motion to compel. R. Doc. 447, at 1. In that notice, Defendant does not seek review of the district court's order granting a stay. *Id.* Defendant does not cite to the FAA. *Id.*

After Defendant noticed its appeal of the Order, Defendant moved for a stay of all proceedings in the district court pending its appeal. R. Doc. 451. Without citation to any authority from this Court of Appeals or the Supreme Court, Defendant argued that the claims of class members who were allegedly subject to arbitration agreements should be automatically stayed because this Court acquired exclusive jurisdiction over their claims when Defendant noticed its appeal. R. Doc. 452, at 5-9. Defendant further argued that the claims of class members not subject to arbitration should also be stayed, because it would be irreparably harmed if class notice were sent, and that as a matter of efficiency the

16

district court should stay all claims. *Id.* Plaintiffs opposed on all grounds. R. Doc. 462.

The district court granted Defendant's motion and stayed all proceedings on July 8, 2022. R. Doc. 466. Plaintiffs have separately petitioned to appeal that order.

## SUMMARY OF THE ARGUMENT

The district court correctly refused to dismiss Plaintiffs' claims under the FAA. The district court erred, however, in finding that *any* claims were arbitrable, and erred further in staying trial of the action on issues relating to the "existence or value of crop damage." Add. 13; R. Doc. 443, at 9. Because Plaintiffs' claims arise under the AIMAs and are for ongoing *yield losses* resulting from soil injury caused by Pipeline construction, and *not* "crop damages," as a matter of basic contract interpretation there are *no* arbitrable claims in this case. Moreover, Defendant's alleged arbitration easements are not agreements to arbitrate under the FAA. The district court also erred in holding Defendant had not waived its rights to arbitration, by finding Plaintiffs were not prejudiced and that Defendant could not have made its FAA Motion sooner.

17

## ARGUMENT

## I.    Standard Of Review

An appellate court exercises plenary review over an order related to arbitration contracts. *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). Arbitration contracts must be treated "like all others" because there is no federal policy preferring arbitration over court-supervised litigation. *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (citations omitted). Questions regarding contract interpretation and mixed questions of law and fact are reviewed *de novo*. *Donaldson*, 581 F.3d at 731.

Where an appeal is taken from a non-final order of the district court, the appellate court may address any issue "fairly included" in the order, including errors made by the district court in the appellant's favor. *See Donelson v. Ameriprise Fin. Servs. Inc.*, 999 F.3d 1080, 1087 (8th Cir. 2021) (citing *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)) (noting entire order review standard applies to interlocutory appeals from arbitration orders)); *Munroe v. Cont'l W. Ins. Co.*, 735 F.3d 783, 789 (8th Cir. 2013) (entire order review standard provides jurisdiction over "portions that were decided in appellant's favor")

18

(quoting *Tristani v. Richman*, 652 F.3d 360, 365–66 (3d Cir. 2011)));
*accord BP P.L.C. v. Mayor of Baltimore,* 141 S. Ct. 1532, 1538 (2021)
(removal statute allows "courts of appeals to examine the whole of a
district court's 'order,' not just some of its parts or pieces"); *see also*
*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("[T]he court
…retains the independent power to identify and apply the proper
construction of governing law.").

## II. The District Court Correctly Determined That Defendant Was Not Entitled To Dismissal.

To justify an appeal on an interlocutory basis, Defendant claims it
is appealing that "portion of the Court's order" denying its FAA Motion.
R. Doc. 447, at 1. Section 4 of the FAA allows a "party aggrieved by the
alleged failure, neglect, or refusal of another to arbitrate under a written
agreement for arbitration [to] petition any United States district court …
for an order directing that such arbitration proceed in the manner
provided for in such agreement." 9 U.S.C. § 4. But where a party seeks
dismissal based upon an arbitration agreement, § 4 does not apply
because the plain language does not authorize dismissal as a remedy. *Id.*;
*Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 838 (6th Cir.
2021) (remedies under FAA are either stay under § 3 or injunction

19

compelling arbitration under § 4); *see also Devon Robotics, LLC v. Davida*, 798 F.3d 136, 143 (3d Cir. 2015) (dismissal is not a remedy under FAA; appellate courts must look at relief requested).[2]

Here, because Defendant is admittedly not seeking to arbitrate any of the claims in this case—rather, it seeks dismissal of "any plaintiff subject to an Arbitration Easement," Pls. App. 239; R. Doc. 288, at 1, ¶ 2; Def. Br. at 26-27—its motion to compel was not a § 4 request, regardless of how Defendant titled it. And notably, in bringing its FAA Motion, Defendant failed to comply with the condition precedent of its own alleged arbitration agreements, which require Defendant to request that the district court "appoint an arbitrator" in connection with filing a motion to compel. Def. App. 105; R. Doc. 225-5, at 6, ¶ 3. Thus § 4 does not apply.

Nor can Defendant turn to § 3 to request dismissal. Here, the Order stayed "trial" for Plaintiffs with alleged arbitration easements. Add. 5; R.

---

[2] Though the Court has determined that the *evidence* supporting motions brought under the FAA may be weighed similarly to the standard applicable to motions to dismiss or for summary judgment, the Court has not held that dismissal is an appropriate remedy under § 4. *See, e.g., Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018).

20

Doc. 443, at 1 (citing 9 U.S.C. § 3). In other words, the district court granted exactly the relief that Defendant requested. R. Doc. 300, at 34 ("Dismissal or stay…is appropriate"). But to the extent that Defendant's dismissal argument is based on § 3, that too is wrong. The district court did not abuse its discretion in denying Defendant's request for dismissal. *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (standard of review under § 3 for dismissal requests is abuse of discretion; "[t]he FAA generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it."); *see also id.* at 771 (Shepherd, J. concurring in part) (stating plain language of FAA does not permit dismissal). And the denial or grant of a discretionary stay is not immediately appealable. *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 844 (8th Cir. 2012) (stating an "order denying the discretionary stay is neither a final judgment, nor an interlocutory order subject to appeal").

Defendant did not invoke any grounds for jurisdiction of this appeal other than the FAA, and thus, it has waived any argument that the Court should consider the discretionary stay. The district court correctly decided dismissal was not warranted.

Appellate Case: 22-1817    Page: 32    Date Filed: 07/15/2022 Entry ID: 5177632

## III. The District Court Erred By Granting A Stay Because Neither Plaintiffs' Claims Nor The Easements Are Governed By The FAA.

## A. The States did not agree to arbitration, therefore no agreement to arbitrate exists.

The FAA only applies where there is a valid agreement to arbitrate. 9 U.S.C. §§ 1-2. Arbitration is a matter of contract, and disputes cannot be stayed or referred to arbitration without a valid agreement to arbitrate. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010); *see also Duncan v. Int'l Mkts. Live, Inc.*, 20 F.4th 400, 402 (8th Cir. 2021) ("[T]he primary inquiry is whether the parties formed a valid contract that binds them to arbitrate their dispute"; the party seeking arbitration has burden of proof to prove a valid agreement) (cleaned up).

With regard to contract formation, where a contract is unambiguous, a court must give effect to the plain and ordinary meaning of the terms expressed in the four corners of the contract, which are conclusive of the intent of the parties. *Luis v. RBC Cap. Mkts., LLC*, 984 F.3d 575, 579 (8th Cir. 2020) (Minnesota law); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002) (Illinois); *DuTrac Cmty. Credit Union v. Radiology Grp. Real Est., L.*C., 891 N.W.2d 210, 216 (Iowa 2017); *Moen v. Meidinger*, 547 N.W.2d 544, 547 (N.D. 1996).

22

Here, the district court erred because it confused the question of contract formation—whether an agreement to arbitrate exists—with the distinct question of whether the dispute falls within the scope of the alleged arbitration agreement. *See Granite Rock*, 561 U.S. at 299; *Duncan*, 20 F.4th at 402; *see also Rosenblum* 299 F.3d at 662 (no agreement to arbitrate where agreement did not clearly and expressly incorporate the other with an arbitration clause); *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 242 F.3d 777, 780–81 (8th Cir. 2001) (holding incorporation clause was ambiguous on the issue of arbitrability).

As is evident from the lack of an AIMA arbitration clause, the States, on behalf of the landowners, did not agree to have any of the AIMA requirements and obligations decided by arbitration. Pls. App. 175-76; R. Doc. 245, at 2-3, ¶¶ 3-5, (Patton Decl.); Pls. App. 180; R. Doc. 246, at 4, ¶ 12 (Moline Decl.); Pls. App. 186-88; R. Doc. 247, at 2-4, ¶¶ 2-7 (Chard Decl.); Pls. App. 190-96; R. Doc. 248, at 2-8, ¶¶ 5, 9-12, 14, 16-20 (Klass Decl.); Pls. App. 199-201; R. Doc. 248-2, at 3-5, ¶¶ 3-8 (Strandberg Aff.). The AIMAs are the controlling agreement governing Defendant's obligations, and the relationship between Defendant, the States, and the beneficiary landowners. Their execution did not depend

23

on the easements; rather, Defendant's "right" to obtain easements depended on both the AIMAs and the FERC CoA, which incorporated the AIMAs. *See* Pls. App. 33; R. Doc. 29-8, at 19, ¶ 22.

Put differently, the States did not intend for Plaintiffs to arbitrate any of their AIMA rights—whether mitigation or compensation rights. That intent is manifest in the lack of an arbitration clause in the four corners of the AIMAs.

The district court correctly found that Plaintiffs were third party beneficiaries of the AIMAs and that the AIMAs lacked an arbitration provision. Add. 14-15; R. Doc. 443, at 10-11. That same analysis mandates the conclusion that Plaintiffs are the direct beneficiaries of the AIMA compensation rights indisputably incorporated in the FERC CoA, and the concomitant conclusion that Defendant has no right to demand arbitration of any issues under the FERC CoA.[3]

The district court's analysis should have ended there. But it continued, concluding that despite the absence of an arbitration provision

---

[3] Moreover, Defendant has no right to arbitrate any issues under the FERC CoA. The FERC CoA incorporated the AIMAs. Thus, under the FERC CoA, Defendant has no arbitration rights.

24

in the AIMAs, the AIMAs did not prohibit or forbid Defendant from attempting to force landowners to arbitrate their AIMA rights to compensation. *Id*. 13, 15. The district court incorrectly reasoned that because the AIMAs permitted landowners and Defendant to negotiate *some* AIMA construction-related mitigation measures in their easements, such as how deep the pipeline had to be buried, Plaintiffs had agreed to arbitrate *all* their AIMA compensation claims in the easements they were forced to grant to Defendant. *Id*. 16.

The result reached by the district court could only have been correct if the AIMAs incorporated the easements, because only an incorporation clause could have created an agreement to arbitrate in the first place. As discussed with more particularity in the Statement of the Case ("SOC") Sections I-III, *supra*, the AIMAs did not incorporate the easements.

In *Rosenblum,* a seller sued under a business sale agreement for failure to pay, and the buyer invoked the arbitration clause of an employment agreement that was executed at the same time. 299 F.3d at 659–65. The Seventh Circuit, applying Illinois law, rejected the attempt, noting that "[t]he contract must show an intent to incorporate the other document and make it part of the contract itself." *Id*. at 664 (citation

omitted). This was true even though the contracts were "related" and "necessary…components of a comprehensive business transaction"; the appellate court found they were "separate, free-standing contracts." *Id.* at 663.

Similarly, in *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, the Sixth Circuit held that a dispute arising out of an insurance policy was not covered by the arbitration provisions in the parties' separate premium payment agreement. 411 F.3d 669, 672 (6th Cir. 2005). The court found that if the insurer "had intended to subject this dispute to the arbitration provision, it could easily, clearly and unequivocally have done so, either by including an arbitration provision in the insurance policy itself, or by adding to the above arbitration provision ….". *Id.*

This is also not a case where a master or umbrella agreement contains an arbitration clause that is held to apply to later agreements which lack an arbitration clause. *See, e.g., Loc. Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1353 (8th Cir. 1995). Here, Defendant did nothing to ensure that its AIMA obligations would be subject to arbitration by negotiating for an arbitration clause in the AIMAs themselves. *Cf.*

26

*GGNSC Omaha Oak Grove, LLC v. Payich*, 708 F.3d 1024, 1027 (8th Cir. 2013) (son of nursing home resident was not obligated to arbitrate claims because no agreement was formed). Nor can the easements be considered the "master" agreement.

No valid agreement to arbitrate AIMA claims was *formed* when landowners entered into easements with Defendant. As third-party beneficiaries, Plaintiffs have a right to enforce their independent compensation rights under the AIMAs, and neither the AIMAs nor the FERC CoA incorporated the easements by reference. Because Defendant cannot show that an agreement to arbitrate AIMA claims was formed, its FAA Motion should have been denied in full.

## B. The district court erred in finding Plaintiffs' AIMA claims fall within the scope of the easements' appraisal clause.

In addition to incorrectly concluding that an agreement to arbitrate AIMA claims existed, the district court also erroneously referred for arbitration the issues of "whether crop damages arising from the Pipeline have occurred and will occur on [Plaintiff] tracts." Add. 28; R. Doc. 443, at 24.

Contrary to what the district court incorrectly found and what Defendant argues, Plaintiffs' claims are not for "crop damage" or

27

"damages to crops." *See, e.g.,* Add. 5, 12-20, 24-26; R. Doc. 443, at 1, 8-16, 20-22. The district court erroneously asserted that Plaintiffs are seeking relief only for "damages to crops," because it incorrectly equated that kind of damage with yield losses. Add. 20; R. Doc. 443, at 16. But neither the AIMAs nor the easements define the terms "loss of crops" or "damages to crops," and therefore it was error to assume they mean the same thing. Defendant has seized on and amplified this error in its Brief.

### 1) *The district court's contract analysis was erroneous.*

Plaintiffs' claims are *not* for "damages to crops," and never have been. Rather, Plaintiffs claim that Defendant injured the soil on the RoW when it constructed the Pipeline, and is that the soil injury from Defendant's pipeline construction is responsible for the reduced *yields* which have resulted and will continue as a result. Def. App. 6, 21-25, 36-37, 40-41; R. Doc. 29, at 2, 17-21, 32-33, 36-37, ¶¶ 2, 49-71, 132-138, 160, D; *see also* R. Doc. 361 at 1, 3-6, 10-11. Plaintiffs' damages model seeks past and future compensation for these reduced yields. Pls. App. 103; R. Doc. 195, at 4, ¶ 8; R. Doc. 362-3, at 4-8.

The difference is definitional, and critical and fundamental to this case. The phrase "damages to crops" in the easements does not

28

encompass Plaintiffs' AIMA claims, i.e., those claims for "*losses* or inconvenience caused by [Defendant] which occurred on or off the Pipeline Right-of-Way *associated with* construction, installation, operation, maintenance and existence of the Pipeline." Pls. App. 33; R. Doc. 29-8, at 19, ¶ 22. In contrast to the "losses" or "loss of crops" in the AIMAs, the phrase "damages to crops" in the easements pertains to a narrower category of damages. Def. App. 105; R. Doc. 225-5, at 6, ¶ 3.

Multiple courts have interpreted the term "damages to crops" to mean damages to standing crops. *See, e.g., Williams v. N. Nat. Gas Co.,* 136 F. Supp. 514, 520 (N.D. Iowa 1955) ("damages to crops" is specifically limited to crops, and that language standing alone cannot be construed to encompass other non-specified categories or types of damages); *see also Phillips Petroleum Co. v. Morris,* 518 S.W.2d 444, 446 (Tx. Ct. App. 1975) ("damages to crops" means either a "planted or growing crop" and easement language providing compensation for "damages to crops" does not include crops grown in the future.). Therefore, the easement language providing compensation for "damages to crops" upon which both the district court and Defendant now rely as the basis for their position on arbitration necessarily means physical harm to plants already grown on

29

the land, and ordinarily would not encompass compensation for crop yield loss or reduced crop yield resulting from physical injury to the soil.

Because "damages to crops" typically means physical damage to growing crops, no easement holder would have understood that language as encompassing ongoing future yield losses resulting from construction related soil injury. Therefore, easement holders *could not have expressly* agreed to arbitrate any issue relating to compensation claims for ongoing yield loss.

In addition, the district court further misconstrued the AIMAs, specifically the terms "mitigation" and "compensation." Add. 15; R. Doc. 443, at 11. The Order conflated the two terms, and failed to note that the AIMAs explicitly limited any negotiations between Defendant and landowners to the mitigative "construction standards or policies" *only*. *See, e.g.*, Pls. App. 39; R. Doc. 29-9, at 2 (Preamble) (ND AIMA) ("Unless an easement specifically provides to the contrary, the *mitigative actions* described *in the construction standards and policies* ... will be implemented in accordance with the conditions listed below") (emphasis added); *see* SOC, Sections I-III, *supra*.

30

In contrast to the mitigative construction actions, the additional compensation obligations imposed by the AIMAs—specifically the "indemnification" and "damages" clauses, wherein Defendant agreed to compensate Plaintiffs for ongoing yield losses—could not be modified, released indefinitely or in perpetuity, or negotiated away in any easement. *See, e.g.*, Pls. App. 32-33; R. Doc. 29-8, at 18-19, ¶ 21 (MN/IA AIMA); *see also* 84 FERC at 62,218 n.31 ("Alliance stated that it 'will reasonably compensate landowners and/or tenants for future damages, losses or inconveniences that are directly associated with the construction, operation or maintenance of the pipeline facility.' As noted at page I-2 of the FEIS, determinations of monetary compensation are left to the courts.").

These limitations were imposed because the AIMAs (and FERC CoA incorporating the AIMAs) are the overarching agreements governing the collective rights of the landowners. Their clear purpose and intent, evident in the language of the agreements, was to benefit landowners whom the FERC and courts found, as a factual matter, would suffer from diminution in their property values and ongoing agricultural impacts resulting from the Pipeline.

31

As noted, the easements expressly incorporated *only* the AIMA *construction standards* be incorporated in the easements. *See* SOC, Section III, *supra*. The easements in the record do not support the argument that the AIMA compensation obligations, as representatively set forth in paragraph 22 of the MN/IA AIMA, were coextensive with the payment of damages clauses in the easements. The district court thus erred in holding that the easements "restated the [AIMA] compensation obligations" in the easements—they do not because they narrow the category of compensable damages. *See* Add. 15; R. Doc. 443, at 11.

Finally, the AIMAs, including their compensation rights, which are independent of any easement, were adopted in full by the FERC as a condition for approving Defendant's application to construct and operate the Pipeline. 84 FERC at 62,218; *See* SOC, Section II, *supra*. Thus, under the FERC CoA Defendant is obligated to compensate Plaintiffs under the rights provided in the AIMAs, which are in addition to the rights provided by either the AIMAs standing alone or the easements. As the district court recognized, Plaintiffs are third party beneficiaries under the AIMAs. Plaintiffs are therefore also third party beneficiaries under the

32

AIMA rights conferred by the FERC CoA.  The FERC CoA does not require Plaintiffs to arbitrate any issue.

### 2) *3M v. Amtex* Is Inapposite.

Because the AIMA claims do not fall within the easements' "damages to crops" clause, Defendant's reliance on *3M Co. v. Amtex Sec., Inc.*, is entirely misplaced. 542 F.3d 1193 (8th Cir. 2008). In *Amtex*, after the defendant filed its original complaint in one court, 3M filed a demand for arbitration and a motion to compel arbitration before the district court, based upon an arbitration clause in the second of two agreements the parties had executed. *Id.* at 1196. A panel of this Court held the original complaint "fell squarely within the scope of the arbitration clause" due to language in the arbitration agreement that required a broad construction. *Id.* at 1199 ("[T]he parties' definition of terms …indicate they agreed to arbitrate a very broad range of disputes regarding the existence, cause or value of any change to the scope of services [defendant] agreed to provide at the plant."). Moreover, the parties agreed that "whenever the two agreements conflicted or addressed the same topic, the [second] subagreement would take precedence over the master agreement." *Id.* At 1197. Therefore, the

33

district court's order compelling the defendant to participate in the arbitration was affirmed. *Id.* at 1199.

Conversely, in this case, the easements do not govern whether AIMA claims can be arbitrated and no one agreed to have the easements "take precedence." And to the extent the clause at issue can be construed as an agreement to arbitrate under the FAA, *see* Section III. C, *infra*, the clause is not broad, as it was in *Amtex.* The easements' compensation obligations are narrower than those found in the AIMAs and cover a different type of damages. Accordingly, the type of damages Plaintiffs seek here—compensation for the soil injury that is responsible for the ongoing reduced yields on the Pipeline RoW—is independently compensable under the AIMAs' "losses" contractual obligations.

## C.   Even if the boilerplate easement language applied, it is not an FAA arbitration argeement.

The district court further erred because the easements are not agreements to arbitrate under the FAA. Add. 11; R. Doc. 443, at 7. As Defendant agrees, oil and gas pipeline companies have used nearly identical language in easement agreements with farmers for over a hundred years. Def. Br. at 18. But Defendant has consistently ignored and failed to distinguish Eighth Circuit precedent finding such a

34

provision was "not technically an agreement to arbitrate, but is an agreement to appraisement." *Kleinheider v. Phillips Pipe Line Co.*, 528 F.2d 837, 843 (8th Cir. 1975) (citation omitted); *see also Sanitary Farm Dairies v. Gammel*, 195 F.2d 106, 113 (8th Cir. 1952) (where parties "before a dispute and in order to avoid one, provide for a method of ascertaining the value of something related to their dealings, the provision is one for an appraisement and not for an arbitration"). The district court, despite addressing this precedent, erred in holding the easements were agreements to arbitrate under the FAA. Add. 11; R. Doc. 443, at 7.

Simply because words like "arbitration," "appraisal," "final," or "binding" are inserted into agreements does not mean an alternative dispute resolution process is arbitration: "[T]he language employed by the parties in their contract has little probative weight." *Salt Lake Trib. Publ'g Co. v. Mgmt. Plan., Inc.*, 390 F.3d 684, 690 (10th Cir. 2004). Rather, the Court must look to "how closely the specified procedure resembles classic arbitration … ." *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 7 (1st Cir. 2004). That includes examining whether the "common incidents of arbitration of a contractual dispute are

35

present: an independent adjudicator, *substantive standards …, and an opportunity for each side to present its case.*" *Id.* at 7 (cleaned up) (emphasis added).

In *Hartford Lloyd's Ins. Co. v. Teachworth*, the Fifth Circuit explained appraisals and arbitration differ in that:

> An appraisal determines only the amount of loss, without resolving issues such as whether the insurer is liable under the policy. Additionally, an arbitration is a quasi-judicial proceeding, complete with formal hearings, notice to parties, and testimony of witnesses. Appraisals are informal. Appraisers typically conduct independent investigations and base their decisions on their own knowledge, without holding formal hearings.

898 F.2d 1058, 1062 (5th Cir. 1990). Applying Texas law to the agreement, the *Teachworth* court held the district court erred by reviewing the appraisal award under the FAA, which permits vacating or modifying an arbitration award. *Id.* at 1063.

Likewise, the Tenth Circuit held that an option contract that specified an exercise price would equal "fair market value" was an agreement to appraisal, not arbitrate. *Salt Lake Trib.,* 390 F.3d at 687. The contract prescribed a method to reach the fair market value by allowing each of the parties to choose their respective appraiser, who could submit a valuation. A third party chosen could contribute a value,

36

but that value could be disregarded by the parties. *Id.* at 690 ("Under the terms of the [agreement], a scenario existed where the parties would not use [the third party's valuation] at all"). Accordingly, the Tenth Circuit held the FAA did not apply.

Here, Defendant's alleged arbitration clause must be construed as an appraisal clause not subject to the FAA. No process or procedure is provided for how the "three disinterested persons" decide or make an award. Apart from the fact that each side may pick a "disinterested person, having appropriate experience and expertise," Def. App. 105; R. Doc. 225-5, at 6, ¶ 3, there is no indication that any of these persons will advocate and present evidence. *See Salt Lake Trib.,* 390 F.3d at 691 ("The appraisers selected by the individual parties functioned more like dueling experts than arbitrators."). Nor is any process specified for how evidence will be produced or weighed, or how the three "disinterested persons" themselves decide if they disagree about the method of quantification for, or amount of damages. As a result, the procedure described in the easements could not definitively resolve this dispute. And, the easements' use of the terms "final and binding" could themselves be used

37

to evade review under the FAA, which allows district courts to modify arbitration awards. 9 U.S.C. § 11.

The nonbinding authority cited by Defendant does not require deviation from the rule in *Kleinheider*. Def. Br. at 18-19. In *Amoco Pipeline Co. v. Dave Kolb Grading, Inc.*, the district court held that the third party defendant landowners' cross claim against the plaintiff was stayed based upon a warranty deed clause that required the pipeline to "pay any damages caused by the operations hereunder" to the landowners. 815 F. Supp. 314, 315 (E.D. Mo. 1993). No party appears to have argued that the deed in question was not an agreement to arbitrate under the FAA, but rather was an appraisal clause under *Kleinheider*, as Plaintiffs have done here.

Similarly, in *Energy Transfer Fuel, LP v. Estate of Souter,* a nonpublished decision based upon and applying Texas law, the court of appeals did not construe the term "damages to crops" or consider whether the agreements were in fact appraisal agreements. No. 10-09-00361-CV, 2010 WL 1611082, at *1 (Tex. Ct. App. April 21, 2010). Finally, in *Erie Oil & Gas, Inc. v. Canfield Farms, Inc.*, also an unpublished decision from an out-of-Circuit jurisdiction, the court was not asked to consider the

38

appraisal/arbitration distinction, and its decision is contrary to *Kleinheider*. No. H-90-31, 1991 WL 253899, at *4 (Ohio Ct. App. Oct. 11, 1991).

The district court erred by not looking past the labels in the easements and by failing to consider the process and nature of the dispute resolution provision in the easements. The easements do not reflect an agreement to arbitrate.

## IV. The Easements' Elective Appraisal Provision Is Limited Solely To "Damages To Crops" And Not Soil Injury Resulting In Ongoing Yield Losses, And Is Also Limited To Disputes About The Amount Of Monetary Damages.

Defendant contends that the district court erred in "carving out" from arbitration issues related to Defendant's liability, such as whether Defendant breached the AIMAs by terminating payment for crop yield losses, the applicable causation standard, and the decision on declaratory relief. Def. Br. 18-24. The error was in staying Plaintiffs' claims at all.[4] Nevertheless, applying the correct legal standard to the district court's

---

[4] Defendant falsely asserts that Plaintiffs did not argue that the Court should only construe the easements to cover damages only. Def. Br. at 16, n.5. Plaintiffs argued below that the easements are limited to disputes about damages. R. Doc. 299, at 27-29.

Appellate Case: 22-1817   Page: 50   Date Filed: 07/15/2022 Entry ID: 5177632

discretionary stay determination, the district court did not abuse its discretion in finding that issues related to Defendant's contractual liability were outside the scope of the easements' dispute resolution provisions. *See* Def. App.106; R. Doc. 225-5, at 7, ¶ 5 ("Except as provided above with respect to limitations on *damages*…").

## A. The courts, not an arbitrator, decide what is arbitrable.

In essence, Defendant now belatedly challenges the district court's authority to determine whether this dispute is arbitrable or falls within the scope of the alleged arbitration easements—even though it asked the district court to determine what the underlying arbitral issues were. R. Doc. 286. Defendant never raised the "who decides" issue, and therefore the issue is waived. *Cole v. UAW*, 533 F.3d 932, 936 (8th Cir. 2008) (Eighth Circuit will not consider issues raise on first time on appeal).

Regardless, "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise…" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (cleaned up). Conversely, where parties bargain for allowing an arbitrator to decide issues of arbitrability, that

40

bargaining is done through a delegation clause. *See, e.g., First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

The easements lack any form of delegation clause, just as the AIMAs lack an arbitration clause altogether. As stated above, none of Plaintiffs' claims should be arbitrated. But the district court certainly did not err in holding that liability issues could not be arbitrated.

## B. Declaratory relief and liability issues are not arbitrable, just as AIMA compensation claims are not arbitrable.

Defendant has consistently, and improperly, conflated arguments about the extent of Plaintiffs' damages with the predicate questions of what obligations are owed under the contracts and whether those obligations have been breached. It is that question that will be answered through Plaintiffs' request for declaratory judgment and breach of contract claim, before any damages determination is made.

Defendant contends that the district court cannot decide aspects of Plaintiffs' claims because they are "inextricably intertwined" with the issue of whether Plaintiffs have suffered ongoing crop yield loss resulting from the Pipeline. Def. Br. at 24. The district court did not err in holding that Plaintiffs' declaratory judgment claim, as well as the issues of breach and the applicable causation standard, were not subject to arbitration. It

41

was no abuse of discretion to refuse to stay those issues. Add. 25; R. Doc. 443, at 21. As stated above, however, the district court erred in otherwise sending the question of whether "crop damages" have occurred and will occur, and the damages valuation, to arbitration.

The cases Defendant cites are inapplicable. Def. Br. at 21-25. In *Brotherhood of Maintenance of Way Employees v. Terminal Railroad Ass'n of St. Louis*, a panel of this Court noted merely that "the jurisdiction of the arbitrator is determined by the arbitration agreement" and that the labor arbitrator in that case did not err when he received additional written materials into the record. 307 F.3d 737, 739 (8th Cir. 2002); *see also Packer River Terminal, Inc. v. City of Minneapolis*, 445 N.W.2d 269, 271 (Minn. Ct. App. 1989) (arbitration clause in agreement required dispute about scope of arbitration clause to be submitted to arbitrator, not court).

*Ross Brothers Construction Co. v. International Steel Services* stands for the unremarkable proposition that "arbitration agreements are to be strictly construed and not extended by implication," and that courts must assure that the arbitration clause covers the dispute at issue. 283 F.3d 867, 875 (7th Cir. 2002) (construing Pennsylvania law). And in

42

*Smith v. Metropolitan Property & Liability Insurance Co.*, the Second Circuit affirmed a district court's discretionary decision *not* to issue declaratory relief, citing overriding principles of federalism and the rule that a court may "refrain from deciding questions of state law" when state sovereignty is implicated. 629 F.2d 757, 759 (2d Cir. 1980).

Finally, in *Klimek v. Horace Mann Insurance Co.*, the Second Circuit held that "[u]nder the particular facts of this case, the disputed damages question implicates the question of [defendant's] duty to provide underinsured motorist coverage." 14 F.3d 185, 188 (2d Cir. 1994). The issue in that case was the apportionment of liability and damages as between various parties and insurers. Those issues are not remotely presented by this case, where Defendant has admitted its duty to pay under the AIMAs. *See* SOC, Section IV, *supra.*

Plaintiffs' declaratory judgment claim requests that the district court declare Plaintiffs' contractual right to compensation for as long as yield loss occurs on the Pipeline Right-of-Way. Def. App. 40-41; R. Doc. 29, at 36-37, ¶¶ 159-60; R. Doc. 363, at 2-3. It is not dependent on the question of whether Plaintiffs have yield loss in any given year. Defendant unequivocally repudiated its clear contract duties in 2015,

43

when it declared that it would no longer pay for yield loss. Pls. App. 114; R. Doc. 199-17, at 2. Plaintiffs should not be required to re-litigate those duties each and every year.

Similarly, the issue of Defendant's breach of the AIMAs—i.e., whether Defendant breached the contracts when it terminated all compensation for crop yield loss, *id.*—and what Plaintiffs must do to prove damages are all readily determinable by the district court, and were reserved to a judicial forum.

## V. The District Court Erred In Holding Defendant Did Not Waive Whatever Arbitration Rights It Allegedly Had.

In addition to considering the merits of the parties' arbitration arguments, the Court must also determine the threshold issue of waiver. After Defendant filed its notice of appeal, the Supreme Court decided *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022). When the Supreme Court decides a rule of federal law, "that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review… ." *Harper v. Virginia Dep't of Tax'n*, 509 U.S. 86, 97 (1993); *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 999 F.3d 257, 263 n.1 (5th Cir. 2021), *cert. denied sub nom. Int'l Energy Ventures Mgmt., L.L.C. v. United Energy*

44

*Grp., Ltd.*, 142 S. Ct. 2752 (2022) (mem) (determining under entire order review that court had appellate jurisdiction over waiver discussion found in district court order).[5]

It is undisputed that in the parties' Joint Rule 26(f) report—filed *before* Defendant moved to dismiss Plaintiffs' First Amended Complaint and *before* Defendant filed its Rule 8 answer—Defendant stated that "Plaintiffs will be unable to satisfy…[Rule 23's requirements]…because …[s]ome putative class members also entered into arbitration agreements with Alliance, giving rise to unique claims and defenses for those Plaintiffs…" Pls. App. 7; R. Doc. 27, at 2; *see also* Add. 20; R. Doc. 443, at 16 ("The parties do not dispute whether Alliance knew of tis claimed arbitration rights."). Despite its incipient identification of an arbitration defense, Defendant waited over two years to file its FAA Motion.

---

[5] While the district court did not have the opportunity to consider *Morgan* before it issued its Order, Plaintiffs provided the other authorities cited herein regarding waiver, which were decided after Defendant filed its Motion to Compel Arbitration and to Dismiss Arbitral Claims, at both oral argument and in their briefing supporting their Motion To Approve Plan and Form of Class Notice. R. Doc. 395, at 13; R. Doc. 446, at 20:1-21:3 (Hr'g Tr. Oral Arg., Jan. 10, 2022).

Appellate Case: 22-1817     Page: 56     Date Filed: 07/15/2022 Entry ID: 5177632

Under § 2 of the FAA, a court may decline to enforce an arbitration contract "upon such grounds as exist at law or in equity for the revocation of any contract," such as waiver, laches, or estoppel. 9 U.S.C. § 2. In *Morgan*, the Supreme Court held that in considering these enforceability defenses, courts may not "create arbitration-specific variants of federal procedural rules…based on the FAA's policy favoring arbitration." 142 S. Ct. at 1712. Specifically in the context of waiver, the Court held that lower courts may not consider prejudice to the non-movant when considering whether a party has waived its rights to arbitrate, because "[o]utside of the arbitration context, a federal court assessing waiver does not generally ask about prejudice." *Id.* at 1713. The unanimous Court stated:

> The FAA's "policy favoring arbitration" does not authorize federal courts to invent special, arbitration-preferring procedural rules. … The policy is to make arbitration agreements as enforceable as other contracts, but not more so…a court may not devise novel rules to favor arbitration over litigation. If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.

*Id.*

Appellate Case: 22-1817    Page: 57    Date Filed: 07/15/2022 Entry ID: 5177632

Under *Morgan*, Plaintiffs need only show that Defendant's motion was untimely or that Defendant acted inconsistently with a right to seek arbitration through its litigation conduct. *Id.* at 1714. Thus, the district court erred first by placing a "heavy burden" on Plaintiffs to prove waiver that does not exist in light of *Morgan*. Add. 20; R. Doc. 443, at 16. The district court also erred as a matter of law in holding that Defendant could not have brought its FAA Motion sooner and that Plaintiffs were not prejudiced as a result. *Id.* 20-24. Applying the framework set forth in *Morgan*, the Court must find this was erroneous and that Defendant waived or was in default of its right to seek arbitration.

## A.    Defendant's FAA Motion was untimely.

Defendant did not make its FAA Motion until July 6, 2021, over two years after Plaintiffs filed their Complaint, R. Doc. 1, despite its knowledge of its alleged right to arbitrate. Pls. App. 7; R. Doc. 27, at 2. But Defendant contends, and the district court erroneously agreed, that as a matter of law it could not have made an FAA Motion before the district court certified the class. Add. 21; R. Doc. 443, at 17. The district court incorrectly determined unnamed class members with alleged arbitration easements were not parties to the lawsuit and could not be

47

bound "by a judicial order to arbitrate" until after the class was certified. *Id.*

The district court committed reversible error in so holding. The Order's legal error derives from the mistaken premise that the Named Plaintiffs' claims were the only claims before the district court until certification. *Id.* 22. That premise is erroneous because named plaintiffs in bringing a class action have two "legally cognizable" interests: first, in their underlying claims on the merits, and second, in their entitlement to represent a class on those claims. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397–98, 403 (1980); *see also McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1056–57 (8th Cir. 2012) (noting distinction between individual named plaintiff claims and class claims).

Critically, "[n]onnamed class members… may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002). Thus, for example, even before class certification unnamed class members are considered parties for the purposes of tolling the statute of limitations. *Id.*; *see also* Def. App. 51-52;

48

R. Doc. 49, at 9-10. And nonnamed class members have standing to appeal a class action settlement, even if they do not seek to intervene. *Devlin*, 536 U.S. at 1, 8-10.

The district court, while citing a footnote from *Devlin's* dissent, ignored the Supreme Court's central holding in that case: that party status "may differ based on context." *Id.* at 10; *see* Add. 21; R. Doc. 443, at 17. The dicta the Court relied upon, however, refers to what happens when a nonnamed class member wants to appeal a judgment—not whether class *claims* may be referred to arbitration. Similarly, *Smith v. Bayer Corp.*, also cited by the district court, examined when members of a proposed class are parties for *purposes of claim preclusion* when class certification is denied in federal court and they later seek to reassert their claims in state court. 564 U.S. 299, 313–14 (2011). Neither *Devlin* nor *Smith* say anything about whether a defendant can *move to stay claims* of unnamed class members under the FAA before certification.

In the context of Defendant's FAA Motion, whether the unnamed class members were parties before certification is irrelevant. This is because Defendant admittedly does not seek to compel *anyone* to arbitrate under Section 4 of the FAA. Its motion did not logically arise

49

under that section, because Defendant did not ask for specific performance. Rather, as the district court correctly found, it sought dismissal, or alternatively a stay of "arbitral claims" under § 3. Add. 5; R. Doc. 443, at 1.

Because of this, Defendant could have sought dismissal or stay of the *claims* of unnamed class members with alleged arbitration easements at the beginning of the case, through a pleading-stage challenge to the class allegations or through a § 3 motion. Whether unnamed class member *claims* were required to be arbitrated was an "issue referable to arbitration" when Defendant became aware of arbitration contracts—which, as noted, was at the beginning of the case. 9 U.S.C. § 3.

That conclusion is buttressed by the analysis in *Donelson*, where the Court recognized that unnamed class member *claims* are nominally present before certification by virtue of the class allegations and class definition asserted in the plaintiff's complaint. 999 F.3d at 1092 (holding that a "district court may grant a motion to strike class action allegations prior to the filing of a motion for class-action certification" where the pleadings made apparent that the plaintiff "could not certify a class ... ."); *accord Delgido v. Crazy Horse Saloon and Rest., Inc.,* 880 F.3d 135, 142

50

(4th Cir. 2018) (rejecting appellant's argument that it could not file a motion to compel arbitration until after conditional certification of a FLSA class because "such a ruling would give defendants a perverse incentive to wait as long as possible to compel arbitration").[6]

In other words, if a named plaintiff's right to bring claims on behalf of a class is facially defective as a matter of law—as Defendant claimed it was in this case in the parties' Joint Rule 26(f) Report, Pls. App. 7; R. Doc. 27, at 2— a defendant may move to dismiss or strike those claims under Rule 12(f). Fed. R. Civ. P. 12(f). The question of "who is in the class" and what claims may be brought as class claims are issues before a district court the day that the class action complaint is filed. Fed. R. Civ. P. 23(a). Defendant here failed to challenge the class definition or class

---

[6] Other cases provide additional support: For example, the Eighth Circuit has recently held that representative actions under the Fair Labor Standards Act may be limited to *claims* —and therefore parties— over which the district court has personal jurisdiction, even before a certification decision. *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865–66 (8th Cir. 2021); *see also McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1058–59 (8th Cir. 2012) (affirming motion to dismiss class allegations under Rule 12(b)(6)); Fed. R. Civ. P. 23(d)(1)(A) (court may make class determination at "early practicable time").

Appellate Case: 22-1817     Page: 62     Date Filed: 07/15/2022 Entry ID: 5177632

allegations at the Rule 12 stage, despite its earlier pronouncement that some unnamed class members were bound by arbitration agreements.

Defendant could have also sought FAA relief earlier because by its terms, § 3 is broader than § 4. "§ 3 … allows litigants already in federal court to invoke agreements made enforceable by § 2. That provision requires the court, 'on application of one of the parties,' to stay the action if it involves an 'issue referable to arbitration under an agreement in writing.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009) (citing 9 U.S.C. § 3); *In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298, 301 (8th Cir. 1995) (the term "party" in § 3 includes both a party to the litigation and a party to the contract, and therefore absent class member had standing to appeal injunction against arbitration). Even nonparties to the litigation, and nonsignatories to a contract, may move to stay litigation under the FAA based upon an arbitration agreement. *Arthur Anderson*, 556 U.S. at 631; *see also Contracting Nw., Inc. v. City of Fredericksburg*, 713 F.2d 382, 387 (8th Cir. 1983) ("Section 3 of the Arbitration Act…is broad enough to permit the stay of litigation between nonarbitrating parties ….).

52

It follows, then, that a defendant in class action litigation has the ability to request a stay of litigation as to absent class members based upon arbitration agreements irrespective of their party status. Failure to do so constitutes waiver. Having failed to seek the relief it claims it deserves—after years of costly litigation—Defendant waived its right to seek arbitration.

**B.   This Circuit Court's prior decisions demonstrate that Defendant relinquished a known right by its litigation conduct.**

Waiver is also demonstrated by Defendant's litigation gamesmanship. In the parties' Joint Rule 26(f) report—again, filed *before* Defendant moved to dismiss Plaintiffs' First Amended Complaint and *before* Defendant filed its Answer—Defendant identified arbitration as a purportedly "unique" defense. Pls. App. 7; R. Doc. 27, at 2. But having identified that "unique" defense, Defendant then indisputably proceeded to act inconsistently with its alleged right to arbitrate through the following litigation conduct:

- Moving to dismiss Named Plaintiffs' claims on the merits and with prejudice under Rule 12(b)(6), without challenging Plaintiffs' class allegations, R. Doc. 39;

- Failing to allege in its Answer, filed seven months after Plaintiffs filed their First Amended Complaint, that some or

53

all Plaintiffs were bound by arbitration contracts that covered the claims in this case, Pls. App. 77-79; R. Doc. 51, at 16-18;

- Opposing Plaintiffs' motion for class certification (R. Doc. 219), which, if successful, would have effectively ended the litigation on the merits, *see Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293 (1st Cir. 2000); and

- Moving, post-certification, for summary judgment on the entire certified Class's claims, R. Docs. 343, 345, including class members with alleged arbitration easements, while opposing the right of those class members to opt out of the litigation and arguing that the Court's decision on Plaintiffs' declaratory judgment claim would also be binding on class members with arbitration easements. R. Doc. 420, at 5-20, 23.

Plaintiffs examine each of these actions in turn:

*First,* with respect to its motion to dismiss, Defendant knew that the district court's order on that motion would determine the scope of claims within the litigation. Even if the order on the motion to dismiss did not have preclusive effect on unnamed class members until after certification, that order determined what claims the Named Plaintiffs *could seek to certify on behalf of a class* that included class members with alleged arbitration agreements. Once a defendant in class action litigation successfully obtains dismissal of some claims asserted by the named plaintiffs, or pares their scope, the dismissed claims cannot be re-asserted post-certification by the named plaintiffs on behalf of the class

54

in the same litigation. It was error for the district court to hold that moving to dismiss did not affect absent class members. Add. 22; R. Doc. 443, at 18.

*Second*, under Rule 8(c), arbitration is an affirmative defense and defense of avoidance. Fed. R. Civ. P. 8(c) ("A party must affirmatively state *any* avoidance or affirmative defense") (emphasis added). The Eighth Circuit has issued multiple opinions holding that waiver may be found where a defendant fails to assert arbitration rights in its Rule 8 answer. *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050–51 (8th Cir. 2016) (noting defendant "had failed to mention arbitration agreements" in its answer "which listed twenty four other affirmative defenses"); *Fogarty v. Piper*, 767 F.2d 513, 515 (8th Cir. 1985) (remanding to district court on question of whether party waived its right to arbitrate through its "failure to plead arbitration as an affirmative defense" and "acting inconsistently" with the right to arbitrate); *Nesslage v. York Sec., Inc.*, 823 F.2d 231, 234 (8th Cir. 1987) (finding no waiver where arbitration was asserted as an affirmative defense in the answer). Other Courts of Appeal are in accord. *See, e.g.*, *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012) ("[A] defendant's

55

failure to raise arbitration as an affirmative defense shows his intent to litigate and not arbitrate" because the "filing of an answer is…the main opportunity for a defendant to give notice of potentially dispositive issues") (cited by *Morgan v. Sundance, Inc.*, 992 F.3d 711, 716 (8th Cir. 2021) (Colloton, J., dissenting), *vacated and remanded*, 142 S. Ct. 1708 (2022)); *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 96 (4th Cir. 1996) (agreeing arbitration is an affirmative defense).

The district court gave short shrift to this authority and erroneously determined that Defendant was not required to state arbitration as a defense under the same mistaken premise that Defendant could not compel arbitration against those unnamed class members. Add. 22; R. Doc. 443, at 18. For the reasons explained in Section V.A. above, this reasoning was manifestly incorrect, but also ignored the fact that in its Answer, Defendant had asserted other contractual defenses against both the Named Plaintiffs' and putative class member claims. Pls. App. 77-79; R. Doc. 51, at 16-18.  In six of the eight Affirmative Defenses raised by Defendant in its Answer, Defendant invoked defenses against both the named plaintiffs and the putative

56

class. *Id.* ("Plaintiffs' claims and the claims of the putative class members are barred…").

*Third*, Defendant attempted to avoid litigation as to the entire class, including those allegedly bound by arbitration agreements, by moving to dismiss under Rule 12, and by opposing Plaintiffs' motion for class certification. If that opposition had been successful, Defendant would have been able to avoid continued litigation as to all class members, including those without arbitration easements. *See Mowbray*, 208 F.3d at 293 (discussing the death knell doctrine). Instead, Defendant hedged its bets and waited to bring its FAA Motion after certification, demonstrating that it was "content with a judicial forum" until that forum did not provide the relief it preferred. *See Morgan*, 992 F.3d at 716 (Colloton, J., dissenting).

*Finally*, Defendant unconditionally moved for summary judgment on all class member claims, without requesting that the district court reserve its decision on those class members allegedly bound by arbitration clauses. R. Docs. 343, 345, 348; *see Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 970 (8th Cir. 1993) (holding litigation activity directed to defending on the merits *after* a motion to

57

stay or to compel arbitration is filed can also result in waiver). This signaled, again, that arbitration was Defendant's fallback approach to dismissing Plaintiffs' claims.

Faced with similar procedural maneuvering, this Court (and numerous other appellate courts) have found waiver. *McCoy v. Walmart, Inc.*, 13 F.4th 702, 704 (8th Cir. 2021) ("Even a single attempt to seek 'immediate and total victory' on the merits can waive arbitration."); *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853, 856 (8th Cir. 2021) ("We have little doubt about what [Defendant] was trying to do. If there was a possibility that the case would end in federal court, it was uninterested in switching to arbitration."); *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1092 (8th Cir. 2007) ("Green Tree also acted inconsistently with its right to arbitrate by urging the bankruptcy court to dispose of Lewallen's claims on the merits, reserving arbitration as an alternative avenue to resolve the dispute.").

Defendant's gamesmanship should not be rewarded. By delaying its FAA Motion and waiting to see what the Court would decide in connection with class certification and summary judgment, Defendant was clearly engaging in the kind of conduct that this Court has

58

repeatedly held constitutes waiver. Such a belated resort to arbitration undermines the objectives of the FAA. The district court erred in reasoning otherwise.

## VI.    The Court May Decide All Issues Raised By The Order.

Plaintiffs have filed a petition to appeal the district court's order of July 8, 2022. They also anticipate Defendant will argue Plaintiffs are precluded from arguing on an interlocutory basis that the district court erred in staying claims under 9 U.S.C. § 3, requiring arbitration under § 4, or in declining to find waiver under § 2, and thus seek permission to cross-appeal, to the extent required. Under either the entire-order review-standard, *see* Section I, *supra*, or the doctrine of pendent appellate jurisdiction, this Court has discretion to decide these issues during this appeal and reverse the district court's stay of claims, rather than wait for entry of a final judgment.

As the Third Circuit has recognized, "[t]ime only runs in one direction. Accordingly, we cannot correct any error the District Court may have made in staying [plaintiff's] suit unless we review it now." *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 136 (3d Cir. 2004) (affirming district court order holding plaintiff was not required to

59

arbitrate, but reversing grant of stay); *see Munroe v. Cont'l W. Ins. Co.*, 735 F.3d 783, 789 (8th Cir. 2013) (entire order review standard provides jurisdiction over "portions that were decided in appellant's favor" even where appellees did not cross-appeal) (quoting *Tristani v. Richman*, 652 F.3d 360, 365–66 (3d Cir. 2011) (allowing a cross-appeal where appellee did not petition for permission to appeal)); *Kincade v. City of Blue Springs,* 64 F.3d 389, 394 (8th Cir. 1995) (pendent appellate jurisdiction appropriate when review of nonappealable decision is "necessary to ensure meaningful review of the appealable one") (cleaned up); *see also Lyons v. PNC Bank, Nat'l Ass'n*, 26 F.4th 180, 191 (4th Cir. 2022) (exercising pendent appellate jurisdiction over portion of order that compelled appellee to arbitration in part).

A cross-appeal is not required, however, given the mirror image interrelationship between the issues presented by Defendant and Plaintiffs' responses thereto. *First*, the "unwritten" cross-appeal rule is a non-jurisdictional "rule of practice" that can be avoided at the discretion of the Court. *Kessler v. Nat'l Enters., Inc.*, 203 F.3d 1058, 1059 (8th Cir. 2000) (courts "should not enforce the [cross-appeal] rule punitively against appellees"); *see also Duit Const. Co. v. Bennett*, 796 F.3d 938, 941

Appellate Case: 22-1817     Page: 71     Date Filed: 07/15/2022 Entry ID: 5177632

(8th Cir. 2015) (court "may consider additional issues" if ruling on appeal affects the conduct of a trial); *Lee v. Burlington N. Santa Fe Ry. Co.,* 245 F.3d 1102, 1107 (9th Cir. 2001) (cross-appeal rule applies where party seeks to increase monetary recovery or decrease monetary liability, but not where the law changes after the time to cross-appeal has lapsed).

*Second*, where, as here, there is an "intervening change in law during the pendency of the appeal, which occurred after the expiration of the deadline for filing a cross-appeal," the rule can be excused. *Zerby v. City of Long Beach,* 637 F. App'x 1008, 1011 (9th Cir. 2016) (citations omitted); *see* R. Doc. 463, at 2 (Pls.' Notice of Suppl. Authority (attaching *Morgan*)); R. Doc. 465, at 1-2 (Def's Response thereto).

*Third*, the cross-appeal rule has little force in the context of interlocutory appeals. The rule protects "two distinct sets of interests: (i) the opposing party's interests in notice and an adequate opportunity to brief the issue, and (ii) the structural interests in a full adversarial presentation of issues designed to unsettle a district court ruling and the finality of judgments." *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1030 (D.C. Cir. 2020). But "[n]o justifiable expectations of repose or finality attach to an interlocutory district court ruling, which can be

61

changed by the district court itself at any time before final judgment." 16 Charles Alan Wright et al., Fed. Prac. & Proc.: Juris. § 3929 (3d ed. 2022).

Here, Defendant is fully aware of Plaintiffs' arguments against its FAA Motion. *See* R. Docs. 244, 266, 295, 299, 395, 462. The FAA Motion issues were fully litigated in the district court and the district court entered an Order. Additional briefing and increased word limits will not assist this Court in understanding the issues. *Kessler*, 203 F.3d at 1059. Moreover, the interlocutory order is not in the category of "final orders" or "final judgments" that fall neatly into the cross appeal rule.

Nevertheless, should the Court in its discretion determine that Plaintiffs must cross-appeal, Plaintiffs respectfully request that the Court treat their Response Brief as their opening brief on cross-appeal.

## CONCLUSION

Plaintiffs respectfully request that to the extent the Court does not hold that Defendant waived its alleged arbitration rights, the portions of the district court's Order denying Defendant's request to dismiss Plaintiffs' claims and staying non-arbitral issues should be affirmed. The portion of the Order staying other non-arbitral issues, i.e., whether crop

damages arising from the Pipeline have occurred or will occur, and the amount or value of damages, should be reversed.

Respectfully submitted,

Dated: July 14, 2022

/s/ *Anne T. Regan*
Michael R. Cashman (MN #206945)
Anne T. Regan (MN #333852)
Brian W. Nelson (MN #0398481)
**HELLMUTH & JOHNSON PLLC**
8050 West 78th Street
Edina, Minnesota 55439
Telephone: (952) 941-4005
Facsimile: (952) 941-2337
Email: mcashman@hjlawfirm.com
Email: aregan@hjlawfirm.com
Email: bwnelson@hjlawfirm.com

Drew R. Ball
Steve McCann
**BALL & McCANN, P.C.**
161 North Clark Street, Suite 1600
Chicago, Illinois 60601
Telephone: (872) 205-6556
Email: Drew@BallMcCannLaw.com
Email: Steve@BallMcCannLaw.com

**ATTORNEYS FOR
PLAINTIFFS-APPELLEES**

63

# CERTIFICATE OF COMPLIANCE

The undersigned counsel for Appellees H & T Fair Hills, Ltd., Mark Hein, Debra Hein, Nicholas Hein, Norman, Zimmerman, Donna Zimmerman, Steven Wherry, Valerie Wherry, Robert Ruebel, Mary Ruebel and Larry Ruebel, on behalf of themselves and all others similarly situated, certifies that:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 5(c) because it contains 12,977 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(7)(B)(i) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in fourteen-point Century Schoolbook font.

3.     This brief and accompanying addendum have been scanned with antivirus software and are virus-free.

Dated: July 14, 2022

*s/Anne T. Regan*
Michael R. Cashman (MN #206945)
Anne T. Regan (MN #333852)
Brian W. Nelson (MN #0398481)
**HELLMUTH & JOHNSON PLLC**
8050 West 78th Street
Edina, Minnesota 55439
Telephone: (952) 941-4005
Facsimile: (952) 941-2337
Email: mcashman@hjlawfirm.com
Email: aregan@hjlawfirm.com
Email: bwnelson@hjlawfirm.com

Appellate Case: 22-1817     Page: 75     Date Filed: 07/15/2022 Entry ID: 5177632

Drew R. Ball
Steve McCann
**BALL & McCANN, P.C.**
161 North Clark Street, Suite 1600
Chicago, Illinois 60601
Telephone: (872) 205-6556
Email: Drew@BallMcCannLaw.com
Email: Steve@BallMcCannLaw.com

**ATTORNEYS FOR
PLAINTIFFS-APPELLEES**

Appellate Case: 22-1817    Page: 76    Date Filed: 07/15/2022 Entry ID: 5177632

# CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM//ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated: July 14, 2022                         *s/ Anne T. Regan*
                                                   Anne T. Regan

Appellate Case: 22-1817    Page: 77    Date Filed: 07/15/2022 Entry ID: 5177632